## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Lucinda S. Arnold, et al.

      Plaintiffs,

v.

                                      Case No. 2:07-cv-01307
                                      Judge Michael H. Watson

Petland, Inc., et al.,

      Defendants.

### OPINION AND ORDER

This case concerns a pet store franchise. Plaintiffs bring this action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). Plaintiffs also assert state law claims for fraud, fraudulent inducement, breach of contract, breach of implied contract, negligent misrepresentation, breach of implied and express warranties, and unjust enrichment. The Court has jurisdiction over this matter under 28 U.S.C. § 1331 and over the state law claims under 28 U.S.C. § 1367.

This matter is before the Court on Petland, Inc.'s ("Petland") motion to dismiss Plaintiffs' RICO claim for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). (Doc. 56). For the following reasons, the Court grants Petland's motion to dismiss.

### I. Facts

The Court derives the following facts from plaintiffs' second amended complaint. (Doc. 53). The Court accepts these facts as true for purposes of ruling on defendants' motion to dismiss.

### A. The parties

Plaintiffs Lucinda S. Arnold and Fred J. Arnold (collectively "the Arnolds") are

individual citizens of the State of Ohio. The Arnolds had a partnership in Marietta, Ohio for the purpose of opening and operating a Petland franchise.

Defendant Petland is an Ohio corporation with its principal place of business in Chillicothe, Ohio. Petland sells pets and pet supplies. It also franchises its pet supply business to franchisees.

Defendants Hunte Kennel Systems & Animal Care, Inc. and Hunte Delivery System, Inc. (collectively, "Hunte") are in the business of supplying puppies to pet stores and have their principal place of business in Missouri. Hunte is a preferred supplier of puppies to Petland, and supplied puppies to the Arnolds' Petland franchise.

### B. Background

In or about 2004, the Arnolds began to explore the possibility of owning and running a Petland franchise. They responded to a Petland advertisement in a Marietta newspaper, but decided against pursuing the investment because of the initial capital investment required $750,000 to $850,000. Petland built the Marietta store and ran it as a corporate store until a franchisee was found. In November 2006, the franchisee closed the store.

Petland then contacted the Arnolds regarding purchasing the store for $400,000. The Arnolds refused the offer. Petland contacted the Arnolds again, to offer them the Marietta Petland franchise as a turn-key operation. About a month later, Petland representative Jimmy Taylor contacted the Arnolds, offering to sell them the Marietta franchise as an existing, turn-key business. Petland represented to the Arnolds that the store was ready to open, requiring only a $20,000 to $25,000 investment in inventory.

The Arnolds investigated the offer, negotiated with Petland, and on February 28,

2007 entered into a franchise agreement with Petland.  Under the franchise agreement, the Arnolds paid Petland an initial franchise fee of $12,500.  Under a separate asset purchase agreement, the Arnolds bought the store's fixtures, equipment, inventory, and related assets for $110,000.  The Arnolds paid another $50,000 to open the store, and spent an additional $50,000 to keep the store open for just over six months.

Responding to pressure from Petland, the Arnolds held the grand opening for the Marietta store on March 31, 2007.  Prior to the opening, Petland placed an order for puppies through Hunte.  The puppies were sick from the outset.  Customers who purchased these puppies returned them within days.  Two of the puppies sold during the grand opening died from parvo and/or viral enteritis within days of sale.  A third puppy from the initial Hunte order also died.  The remaining puppies all showed symptoms of illness, requiring the Arnolds to obtain veterinary care for them at the Arnolds' substantial expense.  Customers also purchased pet food from the store's existing inventory.  The customers soon returned the pet food for full refunds because the expiration date for the food had passed.  Other pet food was returned because it contained maggots.  The Arnolds aver that  the problems with the sick puppies and expired food significantly harmed the store's bottom line as well as its reputation in the community.

The Arnolds also faced problems with the store's Point-of-Sale ("POS") register system, which malfunctioned during the entire six-plus months the store was open.  The system crashed at times and would not accept credit card transactions after 8:00 p.m.  Finally, the store's air conditioning and ventilation system was defective, which exacerbated the problems with the sick Hunte puppies.

The Arnolds allege that as a result of the aforementioned problems, by September 2007 the Marietta franchise was in deep financial trouble. For this reason, the Arnolds contacted Petland in an effort to obtain financial assistance from Petland's preferred lenders. Petland COO Greg Hudson informed the Arnolds that no financial help would be forthcoming from Petland. Instead, Hudson advised the Arnolds to stop paying their vendors, and to pay only the bank, the landlord, and Petland. Hudson warned the Arnolds that if they stopped paying franchise fees, Petland would "eat them for lunch." The Arnolds say that financial difficulties forced them to close the Marietta store on October 13, 2007.

### C. Plaintiffs' claims

Plaintiffs filed their second amended complaint on September 8, 2009, asserting the following claims:

Count I – RICO as to Petland;

Count II – Fraud as to Petland;

Count III – Fraudulent inducement as to Petland;

Count IV – Breach of express contract as to Petland;

Count V – Breach of implied contract as to Petland;

Count VI – Negligent misrepresentation as to Petland ;

Count VII – Violation of implied and express warranties of merchantability
as to Hunte;

Count VIII – Conversion as to Petland;

Count IX – Unjust enrichment as to Petland.

(Doc. 53).

## II. Motion to Dismiss

A claim survives a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal citations omitted).

A court must also "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). In doing so, however, plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "[A] naked assertion . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 557. Thus, "something beyond the mere possibility of [relief] must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Id.* at 557-58 (internal citations omitted).

### III. Discussion

Petland argues that plaintiffs have failed to satisfy the requirements of a RICO claim.  18 U.S.C. § 1962(c).  Specifically, Petland argues that Plaintiffs have failed to assert a RICO enterprise that is separate from Petland itself.  Plaintiffs contend that Petland's motion to dismiss the RICO claim is actually a motion for reconsideration and an attempt by Petland to have a second bite at the proverbial apple.

As an initial matter, the Court finds that it has inherent discretion to reconsider its interlocutory orders prior to the entry of final judgment.  All "district courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *McWhorter v. ELSEA, Inc.*, No. 2:00-cv-473, 2006 WL 3483964, at *1 (S.D. Ohio Nov 30, 2006) (quoting *Marconi Wireless Telegraph Co. v. United States*, 320 U.S. 1 (1943)).  Accordingly, "[m]otions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Id.* at *2.  Therefore, Petland's motion to dismiss is properly before the Court.

The Court will now turn to the merits of Petland's motion to dismiss.  Petland argues that Plaintiffs' RICO claim fails because Plaintiffs have not alleged the existence of an enterprise separate and distinct from Petland.

Plaintiffs bring their civil RICO claim under 18 U.S.C. § 1962(c), which provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

*Id.* Any person injured by a violation of § 1962(c) may bring a civil action under that

section to recover treble damages, attorney's fees, and costs.  18 U.S.C. § 1964(c).  To

plead a civil RICO claim under § 1962(c), a plaintiff must allege (1) conduct (2) of an

enterprise (3) through a pattern (4) of racketeering activity.  *Sedima, S.P.R.L. v. Imrex*

*Co.*, 473 U.S. 479, 496 (1985); *Melton v. Blankenship*, No. 08-5346, 2009 WL 87472, at

*2 (6th Cir. Jan. 13, 2009); *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir.

2006).  The Sixth Circuit has determined that:

> It is plain that the language of this subsection precludes the "person"
> conducting or participating in an enterprise's affairs from simultaneously
> serving as the "enterprise." *Grider v. Texas Oil & Gas Corp.*, 868 F.2d
> 1147, 1150 n.2 (10th Cir. 1989). Because § 1962(c) requires separate
> legal entities as the "person" and the "enterprise," courts are in substantial
> agreement that a corporation cannot be named as the liable "person" and
> simultaneously fulfill the "enterprise" requirement as well. *See, e.g., id.* at
> 1150; *Schofield v. First Commodity Corp.*, 793 F.2d 28, 29-30 (1st Cir.
> 1986) (collecting cases); *B.F. Hirsch v. Enright Refining Co.*, 751 F.2d
> 628, 633-34 (3d Cir. 1984); *Haroco, Inc. v. American Nat'l Bank & Trust*
> *Co.*, 747 F.2d 384, 399-402 (7th Cir. 1984); *cf. United States v. Hartley*,
> 678 F.2d 961 (11th Cir. 1982), *cert. denied*, 459 U.S. 1170 & 1183, 103
> S.Ct. 815 & 834, 74 L.Ed.2d 1014 & 1027 (1983).

*Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481, 1489 (6th Cir. 1989).  *See also*

*Williamson v. Ocwen Loan Servicing, LLC*, 3:09-0514, 2009 WL 5205405, at *4 (M.D.

Tenn. Dec. 23, 2009); *Miller v. Norfolk S. Ry. Co.*, 183 F. Supp. 2d 996, 1001-02 (N.D.

Ohio 2002).

In the instant case, the second amended complaint does not define or describe

the enterprise that is the subject of Plaintiffs' RICO claim.  To the extent it suggests that

Petland is the enterprise, the claim fails under *Puckett*.  Nevertheless, in their opposing

memorandum, Plaintiffs argue that the franchisees may serve as the enterprise in this

case.  In this scenario, the franchisees would simultaneously be the RICO enterprise

and the victims of the enterprise's activities. This argument is futile because the franchisees cannot serve as both the enterprise and the victims of the alleged RICO activity. *Nat'l Org. for Women, Inc. v. Scheider*, 510 U.S. 249, 259 (1994) (an "enterprise" under § 1962(c) is "generally the vehicle through which the unlawful pattern of racketeering activity is committed, rather than the victim of that activity"); *Jaguar Cars v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 267 (3d Cir. 1995) (victims cannot serve as enterprise); *Simon Prop. Group, Inc. v. Palombaro*, No. 08-1634, 2009 WL 1549293, at *5 (W.D. Pa. June 2, 2009) (same, following *Jaguar Cars*). *But see United States v. Browne*, 505 F.3d 1229, 1272-73 (11th Cir. 2007) (disagreeing with *Jaguar Cars*).

In sum, Plaintiffs' second amended complaint fails to define or describe the RICO enterprise. To the extent it describes Petland as the enterprise, the RICO claim is deficient as a matter of law. To the extent that it describes the franchisees as the enterprise, it also fails as a matter of law. Consequently, the Court concludes that Petland is entitled to dismissal of plaintiffs' RICO claim.

## C. State Law Claims

Having determined that Plaintiff's federal claim is subject to dismissal, the Court declines to exercise supplemental jurisdiction over the parties' state law claims. 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). The Court will therefore dismiss the parties' state law claims without prejudice.

## IV. Disposition

For the above reasons, the Court **GRANTS** defendants' motion to dismiss. (Doc. 56.) The Court **DISMISSES** Count I with prejudice, and all remaining claims without prejudice.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**United States District Court**